Case number 20-2093, Jeanette Rodriguez-Valentin v. Doctors' Center Hospital, Manati, Incorporated. Attorney Ruiz Comas, please go ahead and introduce yourself. Yes, may I please record? Good morning. My name is Roberto Ruiz Comas. I'm the attorney for Doctors' Center Hospital, Manati. May I reserve two minutes for re-borrow? Yes, you may. So, may I please record? I believe that the issue to be resolved in this appeal is very straightforward. And the issues are the terms, whether the plaintiff has satisfied their burden in establishing that the standard of care applicable to nurses in this locality, whether the nurses reached that standard of care, and whether that alleged breach was the cause of the injury and the resulting damages. I believe that the review of the case evidence established that that was not proven here whatsoever. In terms of the standard of care, the plaintiff appealed... Counsel, you know, we always address these questions in terms of what issues are preserved and what are not. You are here on the denial of the motion for judgment, notwithstanding verdict. You are here on the denial of the motion for a new trial, and you are here on the denial of the motion for remediature. So, those are the three things. Okay, so what are the standards of review under those three challenges? Well, the standard of review for a Rule 15 motion is a denial of review. And the standard of review for the remediator or Rule 59 is to grant that motion if the outcome is against the clear weight of the evidence, that upholding that verdict will result in a miscarriage of justice. Okay, and remediator? That would be the same thing. I think that the remediator under Rule 59... Let me back up. There were no objections to the jury instructions, is that correct? I don't believe that there was... Well, you've not raised it on appeal in any event. Yes. Okay, so on the motion for new trial, the trial judge said, Look, there's enough evidence with the plaintiff's expert witness to meet the standard, and so I'm going to deny it. Okay, so what's wrong with that? Well, the problem is that the district court judge did not apply what is the standard of care for nurses in Puerto Rico. As the Supreme Court has stated in the case of Blas Toledo versus Hospital Nuestra Señora de Guadalupe, In Puerto Rico, the Supreme Court has stated that the standard of care for nurses is a standard of care where a nurse must exercise a degree of reasonable care to avoid causing unnecessary damage to the patient, and that such degree of care must be equal to the degree of care exercised by other nurses in the locality. Counsel, excuse me, didn't Dr. Hallbridge, the plaintiff's expert, testify that the standard of care in Puerto Rico was the same as the national standard of care when it came to nursing? He testified that, but he was incorrect as to that. He may have been incorrect, but if the jury believed him, and the district judge believed him, how can we interfere with that on a motion, certainly not on a motion for judgment as a matter of law, where we have to take all the evidence most favorably to the non-moving party, and even on a motion for new trial where there's an abuse of discretion standard, Judge, we're the witness. Believe him. You say he's incorrect. Well, because the law in Puerto Rico is very clear that in terms of the nursing standards of care, it doesn't apply to a national standard of care, and Dr. Hallbridge was incorrect in stating that, and the court was incorrect in applying that. You're not listening to me, Counsel. What Dr. Hallbridge said is that the standard in Puerto Rico is the same as the national standard, so he was not denying that a locality standard applied. He's just saying that it made no difference because the nursing profession had reached the point where the standard of care with respect to nursing in Puerto Rico was the same as it was on the mainland. That's essentially what he was saying. Well, the problem is that Dr. Hallbridge has no experience as to what is the standard of care here in Puerto Rico, so his testimony as to whether the nursing standard would apply is speculative in the sense that he has no knowledge as to what is the standard of care that applied to nurses in Puerto Rico. Counsel, I think we get the gist of that argument. Can we move on, please, to the issue of life expectancy? Excuse me, let me frame it for you, please. I take it that comes up on the remediator motion and perhaps on the new trial motion, and those are both abuse of discretion, right? We're supposed to look at the evidence that was before the jury. You did not ask for a special verdict as to life expectancy. You did not ask for jury instructions on this point. Indeed, because we have no special findings, we don't even really know what the life expectancy assigned here was. All we have is a series of rationalizations about what people think the jury did. The district court, excuse me, did not say the jury obviously found this. He said if that was the reasoning of the jury, and then he responded. So let me back up. There was the only evidence that was in the case did not include your evidence. You put on nobody as to life expectancy. You did not ask for a special verdict. You did not ask for jury instructions. So given our standard of review, it's a little bit hard for me to see why we should answer that question head on as opposed to saying, look, you had other objections you could have made, you didn't make them, and we can't say under these circumstances there's an abuse of discretion. Yeah, well, let me let me answer why I did not do specifically that. Prior to commencing the trial, I presented a motion in limine to to bar Dr. Jetty and Ms. Penacchio from testifying as to life expectancy because she's not qualified to testify. Yeah, and you prevailed on that, but that's all you prevailed on. Yeah, but but then then if if if the court has already decided that she could not testify as to life expectancy, when the plaintiff a police started to question as to medical expenses as to age 18 and to age 36 in upon our objections, because we objected to those questions by plaintiff a police in the in the trial. The court effectively what it did by allowing it was to grant the plaintiff the opportunity to talk about life expectancy without any basis, because in reality, to prove life expectancy, you have to have testimony by a physician or by an actuary. First, which would, first of all, would allow you to first set according to the medical records and the physician, this baby or this child. So you're asking us to rule as a matter of law under Puerto Rican law. You always need an expert to testify about life expectancy, even where defendant does not move for a jury instruction, does not move for entry of judgment on that basis alone. But and does not present their own expert, but chooses to wait until there is an abuse of discretion standard of review as to the evidence that was submitted and evaluated by the trial judge. Well, the way that the court is framing these questions puts me in a very in a very delicate position, because when the court effectively decided to grant my motion to not allow the expert by the plaintiff a police to testify about life expectancy. I have and this motion was based upon discovery, because in the discovery, Dr. Penacchio precisely herself disqualify herself to testify as to matters of life expectancy. So if that issue of life expectancy is no longer before the jury, as I saw that the court was going to not allow it. You didn't ask for an instruction, you know, in med mal cases, very often, if there is no expert testimony that there was a violation of the standard of care, the defendant at that point says, judge, enter a verdict for us as a matter of law, because say, Massachusetts law requires that there be expert testimony. You did not do anything of the sort here, you may you obtain to your credit, a limitation on the testimony, but you did not then follow up as a matter of Puerto Rican law. Unless you present expert testimony as to life expectancy, as a matter of law, you have failed to make your case. Well, I disagree in the sense that if I already obtained a determination by the trial court, that life expectancy is not going to be an issue in the case. No, that's not the determination you obtained. You obtained the determination that a particular witness was not qualified to testify about life expectancy. But then the district court allows over my objection for that precise witness to testify about life expectancy. And you have not briefed those objections on appeal. That's not your grounds of appeal. You haven't come to us and said, the error in this case that requires a new trial is that the district court erroneously overruled my objections to this witness's testimony. You haven't done that. You've hinged everything on your assertion that you were entitled to either judgment as a matter of law or to a new trial. Well, the way I understood that I put my position in the brief was precisely because I objected to the court allowing that testimony to go forward and therefore... But then you didn't object to the court charging the jury on it, which implicitly concedes that there was a jury issue there. Because I don't believe the court charged the jury with an instruction of life expectancy. No, but the court charged the jury that they could award future damages for economic loss. And now you're telling us that the jury couldn't do that without testimony as to life expectancy. But when the district court made its charge, you never raised the point. And when the district court presented you with a draft of the verdict form, which says the same thing, you never made this objection. Well, the thing is that the way I understood when the district court allowed the witness to testify as to life expectancy because he was in fact allowing her to testify as to life expectancy without any basis, and I objected to that. I understood that when he overruled my objection, and that was on the record, I was preserving my objection for this appeal. And I believe that in my brief, I touch upon the fact that the plaintiff appealed and the court erred precisely because by not granting my objection as to precisely the issue of life expectancy, it allowed the jury to speculate improperly as to how many years the child would live. If the question would have been posed in another way, perhaps, and this did not happen in the case, but I was very, very adamant when the question came into the jury, and I objected very, very adamantly, judge, you cannot allow a question this way to be posed like that because effectively you are allowing the witness to testify as to life expectancy. And when that already was in the realm of the jury, there was nothing else I could do about it because the judge had already overruled me in that sense. Thank you. We do understand the explanation. Is there anything else you would like to add? Well, the only thing also is that we raised the issue in the remediatory that the court did not use the analysis of evaluating other cases in terms of the same life expectancy and the damages to a child like this. And we raised that issue because the court did not make that analysis in the district court ruling. And so we are appealing as to that the court should have made that evaluation as to other cases and make the evaluation of damages lower in comparison to cases in a similar way. Okay. Thank you very much. You're welcome. Let me see if my colleagues have any further questions. I do have just a quick question. I'm a little confused. I just want to make sure I know what happened here. So you succeed on a motion in limine to keep this particular expert from opining on life expectancy. Yes. But then during the trial, that same expert starts testifying about life expectancy. You object. Yes. And your objection is overruled. My objection is overruled. Yes. Okay. I appreciate that. Thank you. Thank you very much. Attorney Ruiz-Comez. Yes, Attorney Ruiz-Comez. At this time, please mute your audio and your video. Okay. Attorney Efron, please introduce yourself, unmute your audio and video, and introduce yourself to begin. Good morning again, Your Honors. David Efron, representing the appellees in this case. Could you start by addressing Judge McCafferty's last question? I take it you think the testimony that was objected to and was admitted did not, in fact, go to life expectancy, but went to permissible subjects. I'm anticipating, but why don't you answer that question? You anticipate correctly, Your Honor. Our expert never testified as to life expectancy because she was prohibited from doing so. The only thing that she testified to was her life care plan, and the life care plan stated that because up to age 18, the child goes to school and has certain things taken care of until age 18, the cost to have this child in the utmost condition would be such an amount. After that age, it would be a different amount because there would not be as many services available, so it would be a slightly higher amount. She never said that. It was the jury who, together, decided who knows how what the life expectancy should be, and they decided that this child was going to live to the ripe old age of 36. No, we don't know that. All we know is they assigned damages. Yes, Your Honor, but based on the numbers that we gave them and that numbers were unrebutted, we can figure it out and assume that it was somewhere in that range. Okay, well, Mr. Efron, I'm going to ask you to address the other issue. It should be quite clear to you by now that we are concerned about how the question of life expectancy and the need for expert testimony, at least under Puerto Rican law, was presented in this case. It was not presented head-on as it easily could have been. There could have been a motion for judgment as soon as, frankly, the motion in limine was decided and there was a representation that there would be no expert witness. And so, we're kind of looking at the lens through which we have to look at that question, and that lens tends to suggest that the question isn't presented head-on to us. So, could you please present your argument as to that? Yes, Your Honor, and you are correct. It is not presented head-on because under Puerto Rican law, there is no requirement that life expectancy be submitted or be testified to as one of the requirements. Counsel, you kind of missed the point. The point was, given our standard of review, do we actually have to resolve the merits of the question in this case, given the failure to put it directly to the district court? And you don't, for two reasons. The first one, which I just gave you, which is that it's not required under Puerto Rican law, and the second one, because the district court took care of it in their post-trial order, specifically mentioning that. May I go on to the next issue, Your Honor? How did the district court take care of it? Well, it took care of it in their order. I have to… Right, yeah. I mean, it made a ruling on it. They took care of it by prohibiting the life care planner's opinion on how long this child would live. Obviously, based on the life care plan, that would be the utmost care, and that would be the best quality of life, which would translate into a longer life for this patient, but she never testified… I don't see how that bears on the question. Judge Lynch really asked you a question that has, in my mind, two parts. Number one, is life expectancy testimony required in a case of a plaintiff who, because of medical conditions and physical defects, cannot be expected to lead anything approaching a normal lifespan? But above and beyond that, what does the procedural posture of this case tell us about how we now review the claim of error that has been made, considering the opportunities to object that were not seized upon or… Well, there's no waiver here, I don't think, but certainly there were opportunities to object that have not been fully explored, and I, too, am struggling with how we take an unpreserved claim that could have been the subject of an objection either to the verdict form or the jury instruction, and how we treat that when it's presented to us in the form of a claim of error directed to the motion for new trial. So, Your Honor, Judge Selya, the answer is the same. There's no requirement under Puerto Rico law that we have an economist or… Let's assume, Mr. Efran, that I disagree with you about that point. Yes, Your Honor. Answer my procedural question, please. Your procedural question being… Before you answer, you know, there are different institutional interests involved here. One has to do with, just as Judge Selya said, if somebody fails to take any number of opportunities to present an issue of law directly to the court, and our review is only abuse of discretion, we tend to look at it differently. But there is also a separate institutional constraint that court of appeals judges feel that has to do with not making law unnecessarily if the issue of law is not clearly presented to us. And in many ways, that interest in not making law is heightened when it is an issue of predicting what the Puerto Rican Supreme Court would say if it got the question directly, which, as best I can tell, it has never gotten the question directly. So, I hope that framing of it is helpful to you. Our issue is, was there an abuse of discretion in denying the new trial and in denying the remediator? Thank you for your clarification, Judge Lynch. There was not an abuse of discretion because, and again, we weren't prepared to prove a negative, but we'll be happy to brief that in Puerto Rico, there is no authority requiring a life expectancy expert to tell us how long a child or a person… Yes, but here's the problem. There may be no authority saying so, but there's no authority saying to the contrary either. That's why I started the statement by stating that you're asking me to prove a negative, and there is no law to it. No, I was not asking you to prove a negative. I'm just saying the background issue has never been clearly presented to the Puerto Rican Supreme Court. One might venture forecasts as to what they would do, but why would we venture a forecast if we don't need to? Because there's nothing in the law that requires anybody to state what life expectancy would be. It has always traditionally been… Therefore, it cannot be an abuse of discretion in the absence of a case on point from the Puerto Rico Supreme Court saying you have to put on an expert as to life expectancy of a child like this. Well, there is no such case, so it would not be an abuse of discretion. There is no such case that I'm aware of that would require that from the Supreme Court. That's why traditionally in every single case it's the jurors that decide whether there's a life expectancy determination or whether there isn't. It's the jurors that among themselves, based on their experiences as citizens, decide how long is this child going to live. Basically, that's why there was no abuse of discretion on the part of the court. Okay. May I go on very briefly? I know I'm out of time. May I go on the issue of the nurse's standard? Yes, please. Thank you. The healthcare in Puerto Rico is a national standard. It's a national standard for doctors, for hospitals, and also for nurses. The Puerto Rico patients are entitled to the same degree of nursing care and hospital care and medical care as stateside patients. There's no doubt about that. My brother cites a case that says nothing of the sort regarding a different locality. Does that mean that nurses in Puerto Rico are allowed to not discontinue the Pitocin because it's a different standard? Of course not. It's the same standard everywhere. That was the testimony of our expert. Well, actually, your expert's testimony was not that it's the same standard everywhere, but that in Puerto Rico, the standard is the same as the national standard. You're absolutely right. That's exactly the same standard. What I heard your opponent argue was, how would he know? He's not from Puerto Rico. So what's the response to that? The response is that traditionally, Puerto Rico has always had the national standard for all of its medical healthcare. Then why does the Supreme Court of Puerto Rico phrase the standard in terms of a locality rule? Why hasn't the Supreme Court of Puerto Rico said it's a national standard? The fact that the Puerto Rico Supreme Court mentions a locality standard does not necessarily mean that... But the standard we have to follow, they declare Puerto Rico law. We follow it. They've told us the locality rule prevails in Puerto Rico the way it does in most jurisdictions. In saying that, they don't indicate that there would be a different standard from anywhere in the States from national standards. It just says that they use the locality rule, but they don't say how that differs in any way. It certainly doesn't say that the national standard does not apply. It just makes reference to locality. The locality in Florida, in Massachusetts, and in Puerto Rico could very well be the same. We believe it is. It is as to medical care from doctors and from hospitals. We believe it's the same. The way nursing has developed, where now the licensing and everything is done nationally and uniformly, it begs the question that it's a national standard. Perhaps that was in your brief, Mr. Efron. I did not realize the significance of it. To get a nursing certification in Puerto Rico, you have to meet a national requirement? The licensing requirements for doctors in Puerto Rico is the same as in the States, pretty much. Same thing as the hospitals, same thing as the nurses. But Puerto Rico has its own licensing standards. There's no way a nurse gets a national nursing license and can then go into any state or any jurisdiction. Puerto Rico licenses its own nurses if they meet Puerto Rico's criteria. What you're saying is you think Puerto Rico's criteria are the same as most of the other States, but the States' criteria do differ. They do, Your Honor, and that's why when you go from one State to another, when you're a nurse and you go from one State to another, you have to get re-licensed in that new State. Are those the issues? Is there anything else that you would like me to comment on, Your Honors? Let me ask my colleagues. Any further questions? All set. Thank you, Mr. Efron. Thank you, Your Honor. Thank you very much. Mr. Efron, at this time, please mute your audio and video, and I believe Mr. Ruiz Gomez has a two-minute rebuttal. Yes. I think that the questions posed by the panel was very interesting because the Puerto Rico Supreme Court decided to distinguish the standard of care for nursing as to the standard of care for physicians. There is ample case law in Puerto Rico that the physicians are held to a national standard, but Plaintiff's Appeals did not cite any particular case which would point out that in Puerto Rico, the nursing standard is national. There's another case in Puerto Rico by the Supreme Court, Reyes v. Phoenix Assurance. It is in our brief on page 40. Puerto Rico Supreme Court reiterated that nurses providing services in hospitals should not assume for themselves the faculty of physicians. In fact, Dr. Halbridge, in his only determination as to the nurses, was precisely pointing that the nurses should have taken the decision to stop the administration of pathogenic pitocin when, in fact, the doctor was there at all times during the administration of pitocin and the delivery. The doctor took the decision to make a determination as to when, if anything, it would be appropriate to discontinue that. Let me make this final point. I'm sorry. Are you actually arguing that all decisions that most hospitals would leave to nurses, in fact, cannot in Puerto Rico be left to nurses? They must be made by doctors? No. What I'm saying is that in this particular case, the situation is different when the physician is not in the hospital and the nurses are there and they're taking care of the patient and they must make decisions as to the care of the patient. But when the doctor was there… No, no, no, no, no. That distinction doesn't work. You're saying as long as the doctor is in the same room, they can't make decisions. They always have to get the doctor to make the decision. They have to follow the orders of the physician. That is what Puerto Rico… I'm sorry. Did you put in any evidence that under the national standard, doctors are the ones who make the decision as to administration of Pitocin when the heart monitors indicate that perhaps it should be given? Did you put in any evidence to that effect? I put evidence by our expert in the case that the doctor was there. He was examining the monitors. He was observing whether there was changes in the monitor that required that the administration of Pitocin or anything else should be done. And, in fact, this baby came out well. There is no evidence of any hypoxic event. No, no, no, no. The baby came out well does not comport with the evidence that shortly thereafter there were some real signs. So, are you saying that nurses play no independent role as to administration of Pitocin? What I'm saying is that in Puerto Rico, the nurses should take the reasonable care to avoid the unnecessary damage to the patient. If in a particular situation, which was not this case, the nurses are observing the patient and there's no need to make any decision as to administration of Pitocin because the doctor is there. The nurses in this particular case have no independent duty to do otherwise. That's what I'm saying. Okay. Thank you. Any further questions? No. Thank you very much. Okay. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.